No. 02-677

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 79

FARMERS UNION MUTUAL INSURANCE COMPANY,

      Plaintiff and Respondent,

   v.

HOWARD HORTON, d/b/a Howard's Apartments; and
LAUREL TRADER, individually and as Personal
Representative of the Estate of Gary A. Trader;
and GARDNER ASPHALT CORPORATION,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV 2000-470,
                Honorable Douglas G. Harkin, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            David R. Paoli and Heather M. Latino, Paoli & Shea, P.C.,
            Missoula, Montana

      For Respondent:

            William J. Gregoire and Stephanie A. Hollar, Smith, Walsh, Clarke
            and Gregoire, Great Falls, Montana

                        Submitted on Briefs:  January 30, 2003

                                  Decided:  April 10, 2003

Filed:

_____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      Laurel Trader appeals from the July 17, 2002, Order and Memorandum of the Fourth Judicial District Court, Missoula County, granting partial summary judgment to Farmers Union Mutual Insurance.  We affirm.

¶2      The following issue is raised on appeal:

¶3      (1) Whether the District Court erred when it concluded that the employer's liability exclusion contained in Horton's insurance policy precluded coverage for injuries to Horton's employee, Gary Trader, and the resulting claims brought by Trader's wife.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      Gary Trader, an employee of Howard Horton and Gardner Asphalt, was killed in an on-the-job accident.  Gary was applying Trubond fibered aluminum liquid roof coating to the roof of an apartment building owned by Horton when he slipped on the coating and fell approximately forty feet onto a metal railing before hitting the ground.  Gary's wife, Laurel, sued Horton alleging the following: premises liability, wrongful death, negligence and/or intentional malicious acts, negligent infliction of emotional distress, and intentional infliction of emotional distress.  According to Trader, Horton had failed to provide Gary with a safe place to work or with proper safety equipment and training.  Trader sought punitive damages and damages for loss of consortium.

¶5      Horton is insured by Farmers Union Mutual Insurance Company under a Comprehensive General Liability (CGL) policy.  Horton requested that Farmers Union defend him in

the action brought by Trader and indemnify him from Trader's claims pursuant to the CGL policy. Farmers Union refused to indemnify Horton but agreed to finance his defense.

¶6 In addition, Farmers Union brought its own action for declaratory judgment, seeking a determination that Trader's claims were not covered by the CGL policy. Farmers Union, Horton, and Trader filed cross motions for summary judgment. While the motions were pending, this Court decided *Maney v. Louisiana Pacific Corp.*, 2000 MT 366, ¶ 25, 303 Mont. 398, ¶ 25, 15 P.3d 962, ¶ 25, and held that claims for infliction of emotional distress brought by an employee's family were prohibited pursuant to the exclusive remedy provisions of the workers' compensation laws. Farmers Union supplemented its briefs to account for the *Maney* decision and argued that Trader's infliction of emotional distress claims were barred pursuant to our holding. In response, Horton and Trader conceded that there was no coverage for claims precluded by the exclusive remedy doctrine. Horton and Trader further conceded that the "intentional act" exclusion provision contained in the policy precluded coverage for allegations of intentional misconduct and that punitive damages were statutorily excluded from coverage.

¶7 In light of these concessions, the issue to be resolved by the District Court was whether coverage for Trader's remaining claims was precluded by the employer's liability exclusion provision. According to Farmers Union, this provision, which excludes liability for bodily injury to employees of the insured, operated to bar coverage for claims arising out of Gary Trader's death. The exclusion provision states as follows:

This insurance does not apply to:

3

**e. Employer's Liability.**
"Bodily injury" to:
**(1)** An "employee" of the insured arising out of and in the course of:
**(a)** Employment by the insured; or
**(b)** Performing duties related to the conduct of the insured's business; or
**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
This exclusion applies:
**(1)** Whether the insured may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

The policy defines the term "employee" as including leased workers but not temporary workers. A leased worker is defined by the policy as "a person leased to [the employer] by a labor leasing firm under an agreement between [the employer] and the labor leasing firm, to perform duties related to the conduct of [the employer's] business."

¶8 Trader argued that, pursuant to the "employee" definition, the exclusion provision operated to exclude from coverage only those injuries sustained by leased workers, and that Gary was not a leased worker. Horton added that Trader's claims were covered by the CGL policy because he reasonably expected that under the terms of the policy, Farmers Union would provide indemnification for any employment related claims not precluded by the exclusive remedy rule of the workers' compensation laws.

¶9 The District Court granted Farmers Union's motion in part and denied it in part, concluding that because of the employer's liability exclusion provision of the CGL policy, there was no coverage for Gary Trader's injuries. The court also concluded that Horton's reasonable expectations were contrary to the exclusion provision and could not be relied

upon to avoid the effect of the provision. In addition, the court determined that material issues of fact precluded summary judgment on the question of whether an intentional act exclusion provision contained in the policy barred coverage.

## STANDARD OF REVIEW

¶10   The standard of review of an appeal from summary judgment is de novo. This Court will apply the same evaluation as the trial court under Rule 56, M.R.Civ.P. The moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Gonzales v. Walchuk*, 2002 MT 262, ¶ 9, 312 Mont. 240, ¶ 9, 59 P.3d 377, ¶ 9. Once the moving party has met its burden, the opposing party must, in order to raise a genuine issue of material fact, present substantial evidence essential to one or more elements of its case rather than mere conclusory or speculative statements. *Gonzales*, ¶ 9. In addition, our standard of review of a question of law is whether the trial court's legal conclusions are correct. *Gonzales*, ¶ 9.

## DISCUSSION

¶11   Trader's appeal consists of a series of arguments designed to persuade this Court that her claims are covered by the CGL policy notwithstanding the limiting effect of the policy's exclusionary language. She makes the following assertions: (1) that the clear language of the employer's liability exclusion provision operates to exclude from coverage only those injuries sustained by a leased worker, and that since Gary was not a leased worker, the exclusion does not bar coverage; (2) that Horton reasonably expected that Farmers Union would defend him for employment related claims not precluded by the workers' compensa-

5

tion exclusivity rule; and (3) that Horton's conduct, which contributed to Gary's injury, does not satisfy the definition of an intentional act for purposes of the intentional act exclusion provision contained in the policy, and that the exclusion is, therefore, inapplicable.

¶12 Taking each of these arguments into account, we note that the pivotal issue is whether the employer's liability exclusion of the CGL policy is clear and unambiguous, and whether it operates to bar coverage for Trader's claims against Horton. For the reasons set forth below, we conclude that the employer's liability exclusion precludes Trader's claims. We further conclude that the resolution of this issue is dispositive and, therefore, decline to address Trader's remaining arguments regarding the intentional act exclusion provision and Horton's reasonable expectations for coverage.

¶13 The employer's liability exclusion, which Trader argues is inapplicable, excludes from coverage bodily injury to employees. The policy provides that "[t]his insurance does not apply to: 'Bodily Injury' to . . . [a]n 'employee' of the insured . . . rising out of . . . [e]mploy-ment by the insured . . . ." The policy's definition of an employee provides simply that an "'Employee' includes a 'leased worker' [but not] a 'temporary worker'."

¶14 Trader interprets this language as meaning that the term "employee" refers only to leased workers. She cites general rules of construction for insurance policies and contends that these rules, taken together, necessitate this strict interpretation. For example, she observes that exclusions from coverage are generally construed narrowly because they are contrary to the fundamental protective purpose of insurance policies. *National Farmers Union Property v. George*, 1998 MT 205, ¶ 12, 290 Mont. 386, ¶ 12, 963 P.2d 1259, ¶ 12.

6

She also notes that "[i]f the language of a policy is clear and explicit, the policy must be enforced as written." *George*, ¶ 12. Applying these rules, and pursuant to the maxim, *expressio unius est exclusio alterius*, Trader contends that by enumerating one class of persons–leased workers–to be included within the definition of an employee, the CGL policy necessarily excludes all other classes of persons usually included within that definition. Trader concludes that Gary cannot be classified as an employee because he was not a leased worker, and that the employer's liability exclusion provision does not apply.

¶15 On this point, the District Court concluded that Trader's proposed interpretation of the term "employee" is too restrictive. The court, instead, adopted a "usual and common sense" definition of an employee as one employed by another or, more specifically, "one engaged in services for wages or salary by another." According to the court, the reference to leased workers in the CGL policy's "employee" definition indicates only that leased workers are included within the broader definition. Relying on Webster's Dictionary, Tenth Edition, the court further noted that the usual and common sense meaning of the term "include" is to "take in or comprise as part of a whole." Thus, according to the court, the CGL policy identifies employees as those who are employed by another, including leased workers.

¶16 We agree with the District Court in its interpretation of the exclusion provision and, specifically, the use and meaning of the term "employee." In *Wendell v. State Farm Mut. Auto. Ins. Co.*, 1999 MT 17, ¶ 14, 293 Mont. 140, ¶ 14, 974 P.2d 623, ¶ 14, we stated that "[t]his Court is bound to interpret the terms of an insurance contract according to their usual,

7

common-sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Wendell* was based, in part, on our holding in *Stutzman v. Safeco Ins.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34. In that case, we discussed whether, for purposes of enforcing an automobile insurance policy, the term "relative" could have been construed to include spouses even though spouses were not mentioned in the policy's definition section. The policy defined relatives as "a relative of the named insured who is a resident of the same household." *Stutzman*, 284 Mont. at 379, 945 P.2d at 36. Stuztman argued that because the policy did not expressly provide that spouses are relatives, there existed an ambiguity which should have been construed in her favor and against the insurer. *Stutzman*, 284 Mont. at 379, 945 P.2d at 36. We disagreed, stating that "the term 'relative,' construed in its ordinary sense and from the perspective of the average consumer of insurance, clearly and unambiguously includes one's spouse." *Stutzman*, 284 Mont. at 380, 945 P.2d at 36.

¶17    *Stutzman* and *Wendell* require a similar result in the present case with respect to the issue of whether the term "employee," as used in the employer's liability exclusion, encompasses all those engaged in services for wages or salary by another, including leased workers, or whether "employee," as defined, is restricted to leased workers only. As the District Court noted, upon reading the CGL policy, a reasonable insurance consumer of average intelligence, but not trained in the law or insurance business, would understand that the primary purpose of the policy is to insure for damages for bodily injury or property damage. The same consumer would also understand the policy as excluding coverage for

8

employer liability for bodily injuries sustained by employees while in the course of employment.

¶18    Thus, in accordance with our case law, and applying a common sense interpretation of the term "employee," we conclude that the average consumer of insurance, when reading the employer's liability exclusion, would understand this term to refer to all those engaged in the services for wages and salary by another.  The fact that the policy's "employee" definition refers to leased workers suggests only that leased workers have been added to the broader definition of the term.

CONCLUSION

¶19    In summary, we hold that, for purposes of enforcing the Farmers Union policy, the definition of an "employee," if construed in its ordinary sense, clearly and unambiguously includes those who engage in services for wages or salary by another, including leased workers.  We further conclude that because Gary Trader was an employee of Horton, the employer's liability exclusion provision contained in the CGL policy bars coverage for Gary's injuries.  Laurel Trader has not presented substantial evidence that the employer's liability exclusion does not apply and, thus, she has not satisfied her burden in opposing summary judgment.  Affirmed.


                                                    /S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM REGNIER

/S/ PATRICIA COTTER
/S/ JIM RICE

Chief Justice Karla Gray, specially concurring.

¶20 I join in the Court's opinion which effectively holds that, because coverage is precluded via the clear and unambiguous "employee" exclusion, no other exclusion in the policy need be addressed and the case is at an end. The Court is entirely correct.

¶21 I write separately only to clarify that this case, which addresses what appears to be only a partial summary judgment, does not create an exception to our longstanding case law concluding that a grant of partial summary judgment is interlocutory and not appealable. *See, e.g., Matter of Litigation Relating to Riot* (1997), 283 Mont. 277, 280, 939 P.2d 1013, 1015-16; *Kirchner v. Western Montana Mental Hlth.* (1995), 272 Mont. 110, 113, 899 P.2d 1102, 1104. The usual result in a case which comes to this Court prematurely, such as a partial summary judgment, is dismissal of the appeal for lack of jurisdiction, a matter which we may raise *sua sponte. See, e.g., Litigation Relating to Riot*, 283 Mont. at 281, 939 P.2d at 1016; *In re Marriage of Grounds*, 2000 MT 128, ¶ 10, 300 Mont. 1, ¶ 10, 2 P.3d 822, ¶ 10. If this were in reality a partial summary judgment, I would--and I believe the Court would--dismiss it for lack of jurisdiction.

¶22 Appearances notwithstanding, this case is not a partial summary judgment and, therefore, is properly accepted on appeal. The District Court having concluded that coverage is precluded under the "employee" exception in the policy and this Court having properly affirmed on that basis, other disputed policy exceptions--in particular, one with regard to

which the District Court determined genuine issues of fact remained which precluded summary judgment--need not be addressed.

/S/ KARLA M. GRAY