NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> TRIPLE L, INC., <br><br> Defendant-Appellant, <br><br> and <br><br> PENSKE TRUCK LEASING CO., L.P., <br><br> Defendant, <br><br> JOHN OELEIS, <br><br> Intervenor-Defendant. | No. 21-35408 <br><br> D.C. No. 2:20-cv-00015-BMM <br><br> MEMORANDUM[*] |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, <br><br> Plaintiff-Appellee, <br><br> v. <br><br> TRIPLE L, INC.; PENSKE TRUCK | No. 21-35409 <br><br> D.C. No. 2:20-cv-00015-BMM |

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

LEASING CO., L.P.,

        Defendants,

 and

JOHN OELEIS,

        Intervenor-Defendant-
        Appellant.

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted April 14, 2022
San Francisco, California

Before:  BYBEE and R. NELSON, Circuit Judges, and BOLTON,[**] District Judge.
Dissent by Judge R. NELSON.

Triple L, Inc. ("Triple L") and John Oeleis ("Oeleis") appeal the district

court's grant of summary judgment in favor of State Farm Mutual Automobile

Insurance Company ("State Farm"). We have jurisdiction pursuant to 28 U.S.C.

§ 1291, and we reverse and remand.

Oeleis was performing mail delivery services for Triple L in East Glacier,

Montana when he fell off a Triple L-leased truck and injured himself on December

7, 2016. At the time of his accident, Oeleis was an employee of Phoenix R.C.M.,

---

[**]    The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

Inc. ("Phoenix"), which had an arrangement with Triple L whereby Phoenix drivers, like Oeleis, serviced Triple L's contract with the United States Postal Service to deliver mail in rural Montana. Triple L maintained an insurance policy on the truck involved in Oeleis's accident with State Farm, which provided coverage for bodily injury to others but also contained an exclusion to coverage for injury to a Triple L "'employee' which arises out of that employee's employment" (the "Employee Exclusion"). After Oeleis sued Triple L in state court, State Farm sought declaratory judgment in federal district court that it had no obligation to defend or indemnify Triple L in the underlying lawsuit based on, *inter alia*, the Employee Exclusion. The district court granted summary judgment in favor of State Farm, finding the Employee Exclusion barred coverage for Oeleis's injuries because, under Montana's four-factor "control test,"[1] Oeleis was also an employee of Triple L at the time of his accident.

We review a grant of summary judgment de novo, employing "the same standard of review as the district court under Federal Rule of Civil Procedure 56." *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016). We view the evidence in the light most favorable to the non-movant and determine "whether there are any genuine issues of material fact and whether the district court correctly

---

[1] The four factors of the control test are: "(1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire." *Schrock v. Evans Transfer & Storage*, 732 P.2d 848, 851 (Mont. 1987).

applied the relevant substantive law." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021) (citation omitted).

The district court erred in applying the control test in this case. Under Montana law, courts are to "turn first to interpreting the language of the policy when resolving disputes over insurance coverage." *ALPS Prop. & Cas. Ins. Co. v. Keller, Reynolds, Drake, Johnson & Gillespie, P.C.* ("*Keller*"), 482 P.3d 638, 644 (Mont. 2021). When examining the insurance contract, courts are "bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010) (citation omitted). Courts must "construe those policies strictly against the insurer and in favor of the insured," *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011) (citation omitted), and exclusions from coverage must "be narrowly and strictly construed because they run contrary to the fundamental protective purpose of an insurance policy[,]" *Keller*, 482 P.3d at 644 (citation omitted).

The Montana Supreme Court has already determined the "usual and common sense meaning" of the term "employee" in the context of an exclusion that bars insurance coverage for injuries to an insured's employees. *Farmers Union Mut. Ins. Co. v. Horton*, 67 P.3d 285, 289 (Mont. 2003). This definition does not incorporate the right to control the details of an individual's work or otherwise

invoke the control test applied by the district court. Instead, the term only "refer[s] to all those engaged in . . . services for wages and salary by another." *Id.*

Although this definition conflicts with Montana's use of the control test to determine employment status in other contexts, this distinction makes sense when considering the different situations in which the control test and *Horton* apply. As previously noted, exclusions to coverage are construed "narrowly and strictly" in accordance with the fundamental protective purpose of insurance. *Keller*, 482 P.3d at 644. The control test, in contrast, is most frequently used in Montana to determine whether an individual is an independent contractor or an employee for purposes of workers' compensation, the "objective" of which is "to provide, without regard to fault, wage-loss and medical benefits" to injured workers. Mont. Code Ann. § 39-71-105(1) (West); *see Carlson v. Cain*, 664 P.2d 913, 917 (Mont. 1983) (citing *State ex rel. Ferguson v. Dist. Ct.*, 519 P.2d 151, 153 (Mont. 1974)). Workers' compensation thus has a distinct protective purpose of providing benefits to a broader category of workers. *See id.* This purpose is reflected in the operation of the control test itself, which sets a higher standard for showing that a worker is an independent contractor than for showing a worker is an employee. *See Am. Agrijusters Co. v. Mont. Dep't of Labor & Indus.*, 988 P.2d 782, 787 (Mont. 1999). Indeed, "independent contractor status must be established by a convincing accumulation of evidence under the factors and other tests" whereas "employee

5

status may be established on the strength of the evidence under one of the four factors standing alone." *Id.* (citing *Sharp v. Hoerner Waldorf Corp.*, 584 P.2d 1298, 1302 (Mont. 1978)). Given these diverging protective purposes, it is no wonder why the control test has never been used in the context of an exclusion to insurance coverage.

Here, in analyzing the applicability of the Employee Exclusion under Montana law, the district court should have first turned to the language of the Employee Exclusion itself and interpreted its terms according to their usual and common sense meaning. *Keller*, 482 P.3d at 644; *Park Place Apartments*, 247 P.3d at 239. Construing the Employee Exclusion narrowly and strictly, the court should have next applied *Horton*'s definition of employee to the undisputed facts. *See* 67 P.3d at 289. Because it is undisputed that Phoenix, not Triple L, paid Oeleis's wages in exchange for his services, the Employee Exclusion did not bar coverage, and the district court erred in granting summary judgment on that basis. *See id.*

**REVERSED AND REMANDED.**



*State Farm Mut. Auto. Ins. Co v. Triple L, Inc.*, Nos. 21-35408, 21-35409

R. NELSON, Circuit Judge, dissenting:

John Oeleis was paid by Phoenix but controlled by Triple L in his day-to-day work activities. The question here is what constitutes an employment relationship—in other words, not who is an employee but who is an employer. All concede that Oeleis was Phoenix's employee because Phoenix signed Oeleis's paychecks. But there is no reason that he was not also Triple L's employee. That is why the district court correctly employed the control test under Montana law to determine that Oeleis falls under the employee exclusion in the insurance contract between Triple L and State Farm. I would thus affirm the district court's grant of summary judgment to State Farm.

The majority reads *Farmers Union Mut. Ins. Co. v. Horton*, 67 P.3d 285 (Mont. 2003), far too broadly to apply to all employee insurance exclusion cases. But that was not *Horton*'s holding and the majority's broad application is a leap from just a single case. Indeed, *Horton* did not even address the primary issue relevant here: *who* was an employer was not at issue. In *Horton*, the Montana Supreme Court interpreted an employee insurance exclusion that listed leased employees as excluded and temporary workers as not excluded. *Id*. at 287. It rejected the somewhat quixotic argument that because only leased workers were enumerated, all employees had to be covered by insurance, including regular employees. *Id*. at 289.

1

In doing so, it defined an employee as "one engaged in services for wages or salary by another." *Id*. at 288. Like the majority, I would also apply that definition. As a person engaged in services for wages or salary paid by another, Oeleis was an employee. But *Horton* does not purport to identify all employees in insurance exclusion cases. Nothing in the *Horton* definition requires the person who formally pays the employee also be the person for whom the employee engages in services. So the definition does not help us understand whose employee one is. *Horton* does not answer that question, because in *Horton* it was never in dispute.

When the employer is at issue, Montana courts have uniformly used the control test. *See, e.g.*, *Ramsbacher v. Jim Palmer Trucking*, 417 P.3d 313, 318 (Mont. 2018) (en banc); *Brookins v. Mote*, 292 P.3d 347, 355 (Mont. 2012); *Papp v. Rocky Mountain Oils & Mins.*, 769 P.2d 1249, 1257 (Mont. 1989). Because the legal issue here is the same as the control test cases, I would hold that the control test applies.

Oeleis is an employee under Triple L under the control test. This four-factor test requires one of four factors to be met: (1) direct evidence of the right or exercise of control the details of the work; (2) method of payment; (3) furnishing of equipment; and (4) the right to fire. *Potter v. Mont. Dep't of Lab. & Indus.*, 853 P.2d 1207, 1211 (Mont. 1993). The district court found that the first, third, and fourth factors supported that Oeleis is Triple L's employee. Not only did Triple L control

2

Oeleis's work based on the requirements in its USPS contracts, but it also furnished Oeleis's equipment and could pull drivers from a route for violating their employment requirements. Thus, Oeleis was Triple L's employee under any "usual, common sense meaning." *Park Place Apartments, LLC v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010) (citation omitted).

The majority is correct that the control test is usually associated with being an employee versus an independent contractor. Maj. 5–6. That is because its purpose is to determine whose employee a worker is: an employee of a company or an employee of one's own, which we call an independent contractor. This is consistent with *Horton*'s employee definition, which requires that the employee be paid by another in the insurance exclusion context.

Although we must construe exclusions in insurance contracts narrowly to protect insurance consumers, Maj. 4, both State Farm and Triple L should have known that Phoenix's employees could be considered Triple L's employees as well when the parties signed the insurance contract. The Montana Supreme Court has held that "an employee may have more than one immediate employer" under the Montana Constitution and the control test. *Ramsbacher*, 417 P.3d at 319 (citing *Papp*, 769 P.2d at 1257).

True enough, when asking who is an employee, typically the control test is less generous compared to a test based solely on who writes an employee's

3

paychecks. And in applying this strained limitation, the majority relies on "the fundamental protective purpose of insurance." Maj. 5. But no Montana case—including *Horton*—has applied that policy presumption to ignore a clear employment relationship. We go beyond our duty to consider the right questions—who Oeleis's employers are and whether Oeleis can be an employee of two companies—in deciding whether we think he should receive insurance money. And Oeleis is Triple L's employee under the control test.

True, applying the control test here might create a liability uncovered by insurance. But that is the fault (or perhaps the intent) of the contracting parties. And the Montana legislature may remedy this issue if it finds it problematic. But this court must apply Montana law as is and not try to implement policy preferences.